**TRAILER CONDITIONERS, INC., Plaintiff/Appellee,**

**v.**

**Joe B. HUDDLESTON, Commissioner of Revenue for the State of Tennessee, Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 11, 1995.

Permission to Appeal Denied by Supreme Court May 1, 1995.

Charles W. Burson, Atty. Gen. & Reporter, Daryl J. Brand, Sr. Counsel, Nashville, for defendant/appellant.

Christopher M. Was, Trabue, Sturdivant & DeWitt, Nashville, for plaintiff/appellee.

## OPINION

CANTRELL, Judge.

 The Chancery Court of Davidson County ordered the Tennessee Commissioner of Revenue to refund $669,739 that appellee Trailer Conditioners, Inc. paid as sales taxes on services performed between December 1987 and June 1991 for its parent company. The Commissioner of Revenue appealed the order of the Chancery Court, contending that the appellee was properly taxable under Tennessee's Sales and Use Tax Statutes. We find that the Commissioner was correct, and we reverse the order of the trial court.

### I.

Trailer Conditioners, Inc. (TCI) is a wholly-owned subsidiary of United Parcel Service of America (UPS). Its sole activity in Tennessee is to repair trailers owned by two other subsidiaries of UPS. TCI employs over sixty individuals at its repair facility on Whites Creek Pike, and issues paychecks to those employees from its own bank account. TCI does not bill UPS for its trailer repair services, but UPS periodically deposits funds into TCI's accounts, so that it can meet its obligations.

TCI was originally formed because the regional council of the Teamsters Union which represents UPS's automotive repair mechanics would not agree to a contract that provided a lower wage scale for trailer repairmen than for the more highly skilled auto mechanics, unless it was dealing with a separate corporate entity. In other areas of the country, where regional teamster councils did not take the same position, no comparable corporations were organized, and trailer re-

pair in those areas is performed directly by UPS employees, with no involvement by intermediate corporate structures.

An audit of TCI by the Tennessee Department of Revenue resulted in an assessment of sales tax on its repair services. TCI paid the $669,739 assessed for sales taxes and interest. The Department acted under the authority of the Sales and Use Tax Statutes, found in Title 67, Chapter 6 of the Tennessee Code Annotated. TCI subsequently filed suit under T.C.A. § 67–1–18–2(c) for a refund of taxes paid.

In Title 67 of the Tennessee Code, Parts 1 and 2 of Chapter 6 define the sorts of activities that are subject to Sales and Use Taxes. As is to be expected in a revenue measure, the definitions are quite broad, in order to encompass the broadest possible spectrum of commercial activity. The relevant portions of the Sales and Use Tax Statutes for purposes of this appeal are as follows:

> **67–6–102. Definitions.**—As used in this chapter, unless the context otherwise requires:
>
> (1) "Business" includes any activity engaged in by any person, or caused to be engaged in by such person, with the object of gain, benefit or advantage, either direct or indirect. . . .
>
> . . . . .
>
> (23)(F) "Retail sale," "sale at retail" and "retail sales price" include the following services:
>
> . . . . .
>
> (iv) The performing for a consideration of any repair services with respect to any kind of tangible personal property;
>
> **67–6–201. Taxable privilege declared.**—It is declared to be the legislative intent that every person is exercising a taxable privilege who:
>
> . . . . .
>
> (4) Rents or furnishes any of the things or services taxable under this chapter: . . .

TCI argued that as it did not furnish services to the general public or to corporations other than its parent, it could not therefore be considered a "business" as defined by Tenn.Code Ann. § 67–6–102(1). It also argued that its services were not performed "for a consideration" and so should not be included with the taxable repair services under Tenn.Code Ann. § 67–6–102(23)(F)(iv).

We believe that both of these arguments construe the scope of the statute far more narrowly than can be justified by the plain language appearing in it. However, the trial court decided otherwise, persuaded partly by the reasoning in a California case that TCI presented to it, *Mapo, Inc. v. State Board of Equalization,* 53 Cal.App.3d 245, 125 Cal. Rptr. 727 (2d 1975). We decline to adopt the reasoning of the *Mapo* case. We will deal with TCI's arguments in more detail at a later point in this opinion.

## II.

Chapter 6, Part 3 of Title 67 contains a long series of exemptions from Sales and Use taxes. The activities exempted would presumably fall within the ambit of the taxable activities described in Parts 1 and 2, were they not specifically exempted. Among the many exemptions contained in Part 3 are Blood and Plasma (67–6–304), Transfers of Automobiles pursuant to divorce (67–6–306), Sales to Charitable Institutions (67–6–322), Energy for Residential Use (67–6–334) and Dentists (67–6–335). During the period of time relevant to this appeal, there was no exemption that the appellee could rely upon to release it from its obligation to pay Sales Taxes on its activities.

However, in 1994, the General Assembly passed an Act which did in fact eliminate any obligation to pay in the future the taxes the appellee objects to. The act, codified as Tenn.Code Ann. § 67–6–350, is printed below in its entirety:

> **67–6–350. Services rendered between parent corporations and wholly-owned subsidiaries.**—
>
> (a) There is exempt from the tax imposed by this chapter any services otherwise taxable which are rendered by a corporation for another corporation which is affiliated with the corporation rendering the service such that:

(1) Either corporation directly owns or controls one hundred percent (100%) of the capital stock of the other corporation; or

(2) One hundred percent (100%) of the capital stock of both corporations is directly owned or controlled by a common parent; provided, that the services are not accounted for, on the basis of historical accounting practices consistently applied, for the purpose of profit to the corporation rendering the service and such corporation does not otherwise perform services for unaffiliated entities.

(b) The provisions of this section shall be retroactive to January 1, 1991. By the retroactive application of this section, the general assembly seeks to confirm its intent that services rendered as described in this section were not subject to sales tax under prior law. [Acts 1994, ch. 839, §§ 1, 2.]

In accordance with provision (b), the Commissioner refunded $98,641 to TCI, representing the period from January 1, 1991 to June 30, 1991, the last six months of the assessment period.

### III.

TCI does not deny that it is engaged in the activity of repairing trailers, but insists that it is "not engaged in the business of furnishing taxable repair services," and should therefore be exempt from taxation. The argument is a circular one which begs the question it purportedly answers. The relevant question is actually whether TCI meets the definition of a business found in Tenn. Code Ann. § 67–6–102(1), and more specifically whether its activities are engaged in "with the object of gain, benefit or advantage, either direct or indirect."

In its order the trial court answered this question in the negative, finding that TCI "receives no profit" and "merely operates as an internal repair service and paymaster for UPS. . . ." It is true that TCI does not earn a profit on its operations, and that it was not established for the purpose of earning a profit. But the concept of "gain, benefit, or advantage" is much broader than that of profit.

As the appellant points out in its brief, TCI participates in a variety of activities which produce "gain, benefit or advantage" for it as well as for its parent corporation. These activities include the employment of labor at favorable rates, the leasing of property at its Whites Creek facility, and participation in contracts with vendors and public utilities. TCI clearly meets the definition of a business found in Tenn.Code Ann. § 67–6–102(1).

The trial court also held that the appellee's repair services were not performed for a consideration. With all due respect, we must once again disagree with the trial court's conclusion.

"Consideration" is not one of the words defined in Tenn.Code Ann. § 67–6–102, but Tennessee courts have had numerous opportunities to examine and refine this useful concept. Perhaps the simplest definition, and one quite adequate for our purposes, is that consideration may be either a benefit to the promisor or a detriment to or obligation upon the promisee. See *University of Chattanooga v. Stansberry*, 9 Tenn.App. 341, 343 (1928), *Robinson v. Kenney*, 526 S.W.2d 115, 118 (Tenn.App.1973).

There would appear to be sufficient benefit to TCI and sufficient detriment to UPS in the parent's regular transfer of substantial funds into TCI's bank accounts to constitute consideration. The accounting, bookkeeping and other services provided by UPS for TCI also constitute consideration in our view, although the trial court took the provision of these services as further evidence of TCI's lack of autonomy.

We must note that consideration requires the existence of two parties, which the definition we are using calls the promisor and the promisee. Though we disagree with the trial court's finding of lack of consideration, we concede that such a finding is consistent with its declaration that "TCI and UPS exist as separate corporations in name only."

We believe to the contrary however, that despite the extremely close working relationship between the operations of the two companies, they are two distinct entities, and the obligations assumed by one are not binding

on the other, except when they arise out of contracts between them.

The evidence shows that TCI maintains several bank accounts in its own name, owns several motor vehicles and is obligated on its accounts with Nashville Electric Service and Nashville Gas Company. Despite the chancellor's finding that TCI "has no employees of its own," TCI, not UPS, is the named employer and signatory to the labor contracts with the Southern Conference of Teamsters. The non-union manager of TCI also receives his paycheck from TCI, and not from UPS. TCI has its own Federal Employer Identification Number and state employer number, and throughout the audit period it paid taxes to the Tennessee Unemployment Compensation Fund on behalf of its employees.

Further, although TCI performs trailer repairs exclusively for UPS and its other subsidiaries, there is nothing in its Certificate of Incorporation that places limits upon the business in which it may engage or the customers it may serve.

Adoption of the corporate form by TCI has rendered it eligible for certain benefits, and subject to certain obligations, which it is not free to disclaim just because it is convenient for it to do so. The benefits include, but are not limited to, the ability to make a labor contract with the Teamsters on terms more favorable than would be the case if they remained a part of the parent corporation. We hold that the obligations include the payment of sales tax for the operation of its business, at least for the period prior to the date upon which Tenn.Code Ann. § 67–6–350 took effect.

### IV.

We reverse the decision of the trial court and remand this case of the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

TODD, P.J., and LEWIS, J., concur.