IN THE COURT OF APPEALS OF TENNESSEE

# FILED



**October 28, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**
AT NASHVILLE

_____

**BELINDA HOPE CALABRO,**

    Plaintiff-Appellant,

                                      Davidson Chancery No. 98-3086-I

Vs.                                   C.A. No. 01A01-9902-CH-00116

**ARTHUR DONALD CALABRO,**

    Defendant-Appellee.

_____

FROM THE DAVIDSON COUNTY CHANCERY COURT
THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

George E. Copple, Jr., of Nashville
For Appellant

James M. Doran, Jr.; Paula A. Flowers of
Waller Lansden Dortch & Davis of Nashville
For Appellee

***REVERSED AND REMANDED***

Opinion filed:

W. FRANK CRAWFORD, JUDGE

**CONCUR:**

**BEN H. CANTRELL, PRESIDING JUDGE, M.S.**

**PATRICIA J. COTTRELL, JUDGE**

This appeal involves a suit for breach of contract. Plaintiff, Belinda Hope Calabro, appeals from the order of the trial court granting summary judgement to defendant, Arthur Donald Calabro.

Plaintiff, Hope Calabro, is the daughter of the defendant, Arthur Calabro. Arthur Calabro and Hope's mother were divorced when Hope was four years old. From the time of the divorce until Hope Calabro finished high school she lived in Oklahoma with her mother who was granted sole custody of Hope at the time of the divorce procedings. During all times material to this case defendant lived in Memphis, Tennessee. He provided financial support to Hope while she was living with her mother including an allowance, an automobile, and travel expenses. While Hope Calabro was growing up, Arthur Calabro saw her during summers and on some holidays.

Hope Calabro had an excellant academic record in high school. During her senior year of high school Arthur Calabro offered to pay his daughter's expenses to attend a distinguished, private universisty if she received at least $10,000.00 in financial aid. At the time that Hope Calabro was applying to colleges, she knew that she was elligible to attend the University of Oklahoma and receive a full scholarship, suffcient to pay tuition, room, board, books, and student activity fee. Knowing that her father would be willing to finance her college education at a private college if she received $10,000.00 in financial aid, Hope applied to and was accepted at Boston University, Tulane University, Pepperdine University,

Stanford University, the University of California at San Diego, Southern Methodist University, and Vanderbilt University. Several of these schools offered her financial aid.

It is undisputed that in the fall of 1991 Hope Calabro enrolled in and began attending Vanderbilt University with her father paying expenses that exceeded her scholarship. It is also undisputed that during the Christmas break of 1992 Arthur Calabro informed Hope Calabro that he was no longer willing to pay for her college expenses. Both parties agree that at that time he had prepaid her tuition for the spring of 1993 at Vanderbilt. It is undisputed that Plaintiff continued to attend Vanderbilt and completed her course work in the spring of 1995, earning a B.A. in psychology. What remains in dispute is whether Arthur Calabro formed a legally binding contract with his daughter to pay her college expenses and breached that contract by refusing to continue his support in December of 1992.

Plaintiff's complaint alleges that she moved to Nashville to attend Vanderbilt based upon defendant's representation that he would pay for all college tuition costs and living expenses in excess of plaintiff's scholarship while she was attending Vanderbilt. She avers that the defendant willfully repudiated his contract to pay all college tuition costs in excess of the scholarship that the plaintiff received, as well as all living expenses while she was attending Vanderbilt University. Plaintiff further alleges that due to his repudiation of the contract she financed these cost by taking out student loans that became due upon her graduation. Plaintiff demands compensatory damages representing the full extent of all college costs, including, but not limited to, outstanding student loans, personal living expenses during college, and other related expenses.

Defendant's answer admits that plaintiff attended Vanderbilt but denies that he made the representations as alleged in the complaint. Defendant admits that "he advised his daughter that if she entered and successfully remained in a course of study for the purpose of gaining admission to medical school, he would pay certain of her college related expenses while attending Vanderbilt University." He denies that plaintiff moved to Nashville and enrolled in Vanderbilt in response to his representation but admits that plaintiff enrolled

in Vanderbilt and that she took out various student loans. He denies that he willfully repudiated his contract as alleged.

The trial court granted defendant summary judgment, and plaintiff has appealed, presenting three issues for review: (1) whether the trial court erred in holding that there was no valid consideration to support the defendant's promise of his offer to pay for his daughter 's college expenses, (2)whether the court erred in holding that the contract between the parties was barred by the Statue of Frauds, and (3) whether the court erred in failing to enforce the defendant's promise under the doctrine of promissory estoppel. The trial court's order granting summary judgment did not state the reason therefor, and there is no transcript of the hearing on the motion for summary judgment to indicate that the trial judge made any such ruling from the bench. We perceive the dispositive issue to be whether the trial court erred in granting defendant's motion for summary judgment and will consider the arguments of counsel encompassed in the above-stated three issues.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions

drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). If the facts are uncontroverted, summary judgment is inappropriate if reasonable minds could differ as to the inferences to be drawn therefrom. *Keene v. Cracker Barrel Old County Store, Inc.*, 853 S.W2d 501 (Tenn. App. 1992); *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. App. 1981). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Plaintiff contends that there was a binding contract between the parties and that defendant breached the contract when he refused to continue paying for her college expenses. Plaintiff contends that she undertook to do something that she was not legally obligated to do, thereby providing the consideration needed to form a contract. She asserts that defendant received a benefit by having his daughter close to him and away from her mother's influence, and by having a well-educated daughter. Plaintiff further asserts that she gave up substantial scholarships and financial aid at the University of Oklahoma, Tulane, Southern Methodist University, and Pepperdine to attend Vanderbilt. Plaintiff asserts that these foregone opportunities, along with the substantial expense she incurred to attend Vanderbilt, constitute a legal detriment to her as promisee and consideration for her father's promise to pay her education expenses.

Plaintiff asserts that the Statute of Frauds presents no bar to the enforcement of defendant's oral promise to pay his daughter's college expenses. Plaintiff contends that at the very least she partially performed the contract and thus comes within the exception of the Statue of Frauds. She asserts that actually she has fully performed the unilateral contract by attending and graduating from Vanderbilt University. Furthermore plaintiff contends that the doctrine of promissory estoppel takes the contract out of the Statue of Frauds because she detrimentally relied on her father's promise.

Defendant contends that the trial court properly determined that he was entitled to summary judgment as to his daughter's claim relating to expenses and debt incurred after May 1993 because there is no genuine issue of any material fact. He asserts that as a parent he has no legal obligation to pay for the educational expenses of a child that has

reached the age of majority. Arthur Calabro asserts that he did not intend to enter into a contract that legally obligated him to pay for college expenses, but merely desired to help his daughter realize the dream she expressed to him of becoming a doctor. He further contends that even if his generosity could be construed as an obligation, it is a moral rather than a legal obligation, which is not legally enforceable. He asserts that his daughter's college attendance was not a benefit to him and that his satisfaction at having Hope attend school near his home was not an inducement, because he made no such requirement. Defendant maintains that the cause of any detriment to Hope was her failure to excel in school, and he, in fact, suffered the detriment of the expense of two years of his daughter's education.

Finally defendant asserts that in December of 1992, he made it clear to his daughter that he would pay no more after May, 1993, and it was not reasonable, necessary or justifiable for Hope to return to Vanderbilt and rely on further financial support based on his gratuitous promise.

"A contract has been defined over the years as an agreement, upon sufficient consideration, to do or not to do a particular thing." *Smith v. Pickwick Electric Cooperative*, 212 Tenn. 62, 71-72, 367 S.W.2d 775, 780 (1963) (citing *Furman, Green & Co. v. Nichol*, 43 Tenn. 443, 445 (1866). A party attempting to prove the existence of a contract "is required to show that the agreement on which he relies was supported by adequate consideration". *Price v. Mercury Supply Company, Inc.* 682 S.W. 2d 924, 933 (Tenn. App. 1984). "[I]n all simple contracts...whether written or verbal, the consideration must be averred and proved." *Clark v. Small*, 14 Tenn. (6 Yer.) 417, 421 (1834). *See also* 17 Am. Jur.2d *Contracts* § 125 (1965) and 17 CGS *Contracts* § 116 (1963).

The question of what constitutes consideration adequate or sufficient to support a contract has been addressed by a number of Tennessee courts. The court in *University of Chattanooga v. Stansberry*, 9 Tenn. App. 341, 343 (1928) defined consideration as " either a benefit to the maker of the promise or a detriment to, or obligation upon the promise

". (citing *Foust v. Board of Education*, 76 Tenn., (8 Lea), 555). Courts have been willing to find a contract based on facts from which a jury could infer the requisite consideration.

> For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration. The jury may draw any reasonable and natural inference from the proof and if by inference from the proof a benefit to the promisor and detriment to the promisee might be inferred this will constitute a valid consideration.

*Palmer v. Dehn*, 29 Tenn. App. 597, 599, 198 S.W.2d 827, 828 (1946); *see also Trailer Conditioners, Inc. v. Huddleston*, 897 S.W.2d 728, 731 (Tenn. App. 1995); *Robinson v. Kenney*, 526 S.W.2d 115, 118-19 (Tenn. App. 1973).

In *Palmer v. Dehn* the Court of Appeals found that the jury was justified in drawing the inference that the promisee accepted a promise that he would be compensated for the loss of his finger along with any expenses caused by the loss in consideration for his foregoing the right of action for a reasonable time.[1] *Palmer,* 29 Tenn. App. 600, 198 S.W.2d 828. Plaintiff's forbearance in bringing a suit could easily be viewed as a detriment to the plaintiff and a benefit to the defendant. *Id.* Consideration has also been found to pass between parties to a contract in the form of a promise for the use of land to construct a transmission line, with the benefit received in consideration for the promise being the use of the electric current provided by the line. *Smith*, 367 S.W.2d 780. Other consideration found sufficient to support a contract by Tennessee courts include: the transfer of funds along with accounting and bookkeeping services, *Trailer* 897 S.W.2d 731; the purchase of business equipment from landlord by tenants, *Jeffers v. Hawn* 186 Tenn. 530, 212 S.W.2d 368 (Tenn. 1948); and an agreement to reduce the rent where the landlord's building remained occupied and he was spared the hazard and expense of enforcing a suit for the entire debt owed him, *Haun v. Corkland*, 55 Tenn. App. 292, 399 S.W.2d 518 (Tenn. App. 1965).

In addition to the benefit, detriment paradigm, Tennessee courts have defined valid

consideration in terms of the promisee's legal rights and obligations. "Consideration consists when the promisee does something that he is under no legal obligation to do or refrains from doing [that] which he has a legal right to do". *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. App. 1995) (citing *Brown Oil Co., Inc. v. Johnson*, 689 S.W.2d 149 (Tenn. 1985)[2].

Simply stated, plaintiff's evidence from her deposition testimony, and the deposition of Mr. Calabro's sister[3], is that Mr. Calabro promised to pay her tuition and expenses over and above the $10,000.00 scholarship if she attended Vanderbilt. Plaintiff had previously been entitled to various scholarship opportunities at other colleges, but she relinquished those opportunities based upon the strength of defendant's promise. Although she preferred to go to another college, she deferred to Mr. Calabro's preference that she attend Vanderbilt. There was no condition attached to the promise to pay tuition that she maintain any sort of grade-point average or class standing, nor that she pursue any particular curriculum.

Defendant's testimony by deposition indicates that he did agree to pay the tuition and other expenses, but that he did not require that his daughter attend Vanderbilt. He admits that there was no condition attached that she pursue a pre-med curriculum or maintain a certain grade-point average.

We believe under the proof in this case that there is sufficient evidence to create a genuine issue of material fact as to whether there was adequate consideration flowing between the parties to constitute an enforceable contract. There is a dispute as to whether a benefit was conferred on defendant on his promise to pay the tuition and whether plaintiff suffered a detriment in her performance of the contract or agreement.

Defendant asserts that even if there was adequate consideration, the oral contract would be barred by the Statute of Frauds, T.C.A. § 29-2-101(a)(5)(1998), which provides:

> [U]pon any agreement or contract which is not to be performed

within the space of one (1) year from the making of the agreement or contact; unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Plaintiff relies on her performance of the contract as excepting the contract from the operation of the statute.

The doctrine of part performance was utilized by the court in **Blasingame v. American Materials, Inc.**, 654 S.W.2d 659 (Tenn. 1983) in enforcing an oral contract where over a period of years, the

> plaintiff was led to believe that an oral employment contract he made with the defendant corporation would be honored; that in reliance thereon, plaintiff proceeded to perform his part of the bargain; and that in doing so, he so altered his position as to suffer an unconscionable loss if the corporation was allowed to rely on the Statue of Frauds. There is material evidence in this record to support those concurrent factual findings and they are binding on this Court.

*Id.* at 663. The Supreme Court found that such facts brought the plaintiff within the exception of part performance, and the plaintiff thereby avoided the Statute of Frauds. *Id.*

The court in **Blasingame** clarified the equitable nature and limited the purpose of the doctrine stating:

> [T]his doctrine of partial performance to take the verbal contract out of the operation of the Statue of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds. The acts of the appellant relied on as partial performance had been done by him in pursuance to the averred contract and agreement and are clearly referable thereto. 'The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself to the statue to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense.' 49 Am.Jur., § 427, page 733.

*Blasingame,* 654 S.W.2d 663 (quoting *Buice v. Scruggs Equipment Co.,* 194 Tenn. 129, 137, 250 S.W.2d 44, 48 (1952)).

Plaintiff also relies upon the doctrine of promissory estoppel as an exception to the Statute of Frauds. Promissory estoppel is explained as:

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. App. 1991) (quoting *Restatement (Second) of Contracts* § 90); *see also Alden v. Presley* 637 S.W.2d 862, 864 (Tenn. 1982).

There are limits to the application of promissory estoppel:

> Detrimental action or forbearance by the promisee in reliance on a gratuitous promise, within limits constitutes a substitute for consideration, or a sufficient reason for enforcement of the promise without consideration. This doctrine is known as promissory estoppel. A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration. The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the loss suffered in reliance is negligible, nor where the promisee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made.

*Alden* 637 S.W.2d 864 (citing L. Simpson, Law of Contracts § 61 (2d ed. 1965)). The doctrine of promissory estoppel is also referred to as "detrimental reliance" because the plaintiff must show not only that a promise was made, but also that the plaintiff reasonably relied on the promise to his detriment. *Engenius Entertainment, Inc. v. Herenton*, 971 S.W.2d 12, 19-20 (Tenn. App. 1997) (citing *Foster & Creighton Co. v. Wilson*

*Contracting Co.*, 579 S.W. 2d 422, 427 (Tenn. App. 1978); *and Quake Constr., Inc. v. American Airlines*, 141 Ill.2d 281, 152 Ill. Dec. 308, 565 N.E. 2d 990, 1004 (1990). Furthermore the promise upon which the promisee relied must be unambiguous and not unenforceably vague. *Amacher*, 826 S.W.2d 482.[4] However, a "claim of promissory estoppel is not dependent upon the existence of an expressed contract between the parties". *Id.* at 19 (citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73-74 (2d Cir. 1989); *United Magazine Co. v. Prudential Ins., Co.*, 877 F.Supp. 1076, 1084-85 (S.D. Ohio 1995); *Quake Constr., Inc. v. American Airlines*, 141 Ill.2d 281, 152 Ill. Dec. 308, 565 N.E. 2d 990, 1004 (1990). The court in *Engenius Entertainment, Inc.* held that the trial court erred in dismissing the plaintiff's promissory estoppel claim where the complaint alleged that defendant made a promise which they reasonably should have expected to induce action by the plaintiff, that plaintiff did take such action induced by the promise, and that plaintiff relied on the promise to his detriment. *Id.* at 20. From our review of the record, we conclude that there are disputes of material fact as to the alleged promises of defendant, the plaintiff's action and response thereto, and any inferences that legitimately may be drawn therefrom. The trier of fact should first determine whether a valid contract exists between the parties. In this regard, our Supreme Court stated in *Johnson v. Central Nat'l Ins. Co.*, 210 Tenn. 24, 356 S.W.2d 277 (1962):

> While a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced. *American Lead Pencil Company v. Nashville, Chattanooga & St. Louis Ry. Co.,* 124 Tenn. 57, 134 S.W. 613, 32 L.R.A., N.S., 323.

356 S.W.2d at 281.

Alternatively, the trier of fact should determine whether plaintiff may rely upon the theory of promissory estoppel.

Accordingly, the order of the trial court granting summary judgment is

reversed and this case is remanded for such further proceedings as necessary.  Costs of appeal are assessed to appellee.

_____

                                        **W. FRANK CRAWFORD,  JUDGE**

**CONCUR:**

_____

**BEN H. CANTRELL,
PRESIDING JUDGE, M.S.**


_____

**PATRICIA J. COTTRELL, JUDGE**