FILED

02/10/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2016 Session

## PHYLLIS ARRINGTON, ET AL. V. B.J. BROYLES, ET AL.

**Appeal from the Circuit Court for Greene County**
**No. 12CV372     Douglas T. Jenkins, Chancellor[1]**

_____

**No. E2016-00363-COA-R3-CV**

_____

This appeal involves the plaintiffs' complaint for breach of common law and statutory warranties, violations of the Tennessee Consumer Protection Act, and promissory estoppel regarding the purchase of drywall that was later found defective. The plaintiffs voluntarily dismissed their claim for breach of common law and statutory warranties, while the seller sought summary judgment. Following a hearing, the trial judge recused himself before ruling on the motion for summary judgment. Thereafter, he entered an order granting partial summary judgment. The new judge then entered a final order of dismissal, confirming the grant of summary judgment and dismissing the case in its entirety. The plaintiffs appeal, claiming that remand is appropriate because not all issues were resolved by the grant of summary judgment. We agree and reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. and D. MICHAEL SWINEY, C.J., joined.

Francis X. Santore, Jr., Greeneville, Tennessee, for the appellants, Phyllis Arrington and Gary William Arrington.

F. Braxton Terry, Morristown and W. Lewis Jenkins, Jr., Tennessee, for the appellee, B.J. Broyles, doing business as Bargain Salvage and Ace Development, Incorporated.

---

[1] Sitting by interchange.

**OPINION**
**I.     BACKGROUND**

Phyllis and Gary Arrington (collectively "Plaintiffs") purchased drywall from B.J. Broyles, doing business as Bargain Salvage and Ace Development, Incorporated, ("Seller") on October 11, 2007. Plaintiffs later installed the drywall at some point in 2011. Upon discovering that the drywall was a banned product from China that contained sulfur compounds, Plaintiffs spoke with Seller, who allegedly agreed to remove the defective product.

On July 7, 2012, Plaintiffs filed suit against Seller. An amended complaint was later filed with the assistance of counsel. The amended complaint included claims for breach of common law and statutory warranties, violations of the Tennessee Consumer Protection Act ("TCPA"), and promissory estoppel.[2] Plaintiffs alleged that Seller was also individually liable because his "actions or inactions were not an appropriate use of the corporate form" and because they were led to believe that they were "dealing with" Seller in his "personal capacity as well as his business capacity." Relative to the promissory estoppel claim, they alleged that Seller should be estopped from relying upon the applicable statute of limitations because Seller induced them not to file suit by promising to "make things right." They further claimed that they relied upon these promises to their detriment.

Seller responded by denying wrongdoing and filing a motion to dismiss the claim in its entirety, alleging that dismissal was appropriate pursuant to the applicable statute of limitations. Seller also claimed that dismissal was appropriate because Plaintiffs failed to join the original seller and manufacturer of the drywall as indispensable parties. An agreed order was later entered that documented the nonsuit of the breach of warranty claims without prejudice and the voluntary withdrawal of the motion to dismiss. The order did not address the TCPA or promissory estoppel claims.

On June 3, 2015, Seller filed a motion for summary judgment of the TCPA claim. Seller alleged that he had no knowledge of the defective nature of the product at the time of the sale in 2007, that his company quit selling the product once the defect was discovered, and that he advised Mrs. Arrington of the defective nature of the product prior to her installation of the product. Seller alleged that he did not engage in a deceptive practice, that Plaintiffs failed to present evidence of any damages, and that Plaintiffs failed to mitigate any alleged damages by installing the drywall with full knowledge of the potential defective nature of the product. Seller attached a statement of

---

[2] Plaintiffs phrased the claim as one for "breach of contract by estoppel."

undisputed material facts and affidavits in support of his request for summary judgment dismissal of the TCPA claim.

Seller attested that Mrs. Arrington installed the drywall after he advised her not to install the product until he could determine whether it was defective. He later inspected the home and found that some of the drywall had been obtained from a different manufacturer whose products are sold at Lowes, Home Depot, and Drywall Wholesalers, not Bargain Salvage. He "offered to potentially help [her] remediate the home, if needed, if she would provide" the necessary contact information for the contractor who installed the drywall. He claimed that she could not provide the necessary information and further stated,

> At the time we sold the drywall that had high sulfur content, we had no idea that this occurred. The drywall was never recalled by the Federal Trade Commission; however, once we determined there was high sulfur content in some of the drywall, we immediately stopped selling it.
>
> In seeing the home [at issue], I was not able to determine that any drywall in the home came from Bargain Salvage.

Andy Broyles confirmed Seller's account of the inspection of the residence and their lack of knowledge of the defective nature of the product at the time of the purchase.

Agreeing that the only germane issue left for the court to decide was the validity of the TCPA claim, Plaintiffs responded by asserting that the motion for summary judgment was untimely, that the affidavits were inadmissible because neither contained an averment of personal knowledge, and that genuine issues of material fact remained. Plaintiffs attached their own affidavits in support of their response, alleging, in pertinent part, that they were not advised of the defective nature of the product at the time of purchase, that Seller promised on several occasions to "make it right" or "see what he can do" about the defective product, that Seller never advised them not to install or to test the product prior to installation, and that they provided the contact information for the contractor that installed the product.

A hearing on the motion for summary judgment was held on June 11, 2015. Following the hearing, Tom Wright, Circuit Court Judge, entered an order providing, in pertinent part, as follows:

> During the course of arguments regarding the existence of genuine issues of material fact in this case it appeared to the Court that, although there is no genuine issue of material fact with regard to whether the alleged defective

drywall was sold by [Seller] with knowledge of [the] purported deficiencies, there is a dispute between the parties that may be a consumer protection act claim, a negligence claim or a misrepresentation claim *relating to the actions of the parties after [Seller] discovered the potential defectiveness of the Chinese drywall.* It appeared to the Court through the arguments that there were genuine issues of material fact in connection with such claims; however, such claims were not articulated in the [amended complaint] in this case.

Counsel for [Plaintiffs] made an oral motion to amend the [complaint] during the hearing and the Court GRANTED the oral motion to amend. Accordingly, it is hereby

ORDERED that [P]laintiffs shall have until July 11, 2015[,] within which to file an amended complaint. [Seller] shall answer the amended complaint by August 10, 2015.

(Emphasis added.). Judge Wright further found that a potential conflict of interest may exist if the case proceeded to a trial. Accordingly, he continued as follows:

[I]t is hereby ORDERED that the undersigned RECUSES himself from this case; and, with the consent of the parties, REASSIGNS this case to Chancellor Douglas T. Jenkins for all further proceedings.

The case was then transferred to Chancellor Jenkins by entry of an interchange order on June 18, 2015.

The next day, on June 19, 2015, Plaintiffs filed a second amended complaint that recited the same allegations in the first amended complaint verbatim with the exception of the following sentence:

[Seller] knew that the suspect drywall was otherwise not fit for building purposes and was Chinese drywall but with reckless and wanton disregard, still let Plaintiffs, to their detriment, install said drywall in their house.

Seller responded by denying wrongdoing and requesting dismissal.

Despite his recusal, on July 7, 2015, Judge Wright entered an order granting summary judgment on the TCPA claim, finding as follows:

This matter came before the Court on June 11, 2015[,] on [the] Motion for Summary Judgment as it relates to the [TCPA claim].

[Seller] contend[s] that there is no genuine issue of material fact as to whether or not [Seller] engaged in unfair and deceptive trade practices. [Plaintiffs] have responded to the same contending there is a genuine issue of material fact.

The Court finds that [Plaintiffs] purchased drywall which had high sulfur content from [Seller].

The Court further finds that [Seller] did not have any knowledge that the drywall in question had high sulfur content. The record further reflects that [Seller] did not have any knowledge of the high sulfur content drywall at the time he sold it to Ms. Arrington as can be found in his affidavit which is undisputed on the record.

The Court further finds that [Plaintiffs] are not able to put forth any evidence, at this time, that [Seller] had any knowledge there was something wrong with the drywall at the time it was sold.

The Court notes that [Seller] actually placed the high sulfur content drywall in . . . homes for resale and; thus, sustained damages . . . which had to be remediated.

The Court finds that [Seller] could not have engaged in unfair deceptive trade practices if [he] did not know of the existence of any problems with the drywall at the time of the initial sale.

**WHEREFORE**, [Seller's] Motion for Summary Judgment as it pertains to the violation of the [TCPA] at the time of the sale of the drywall is granted.

Plaintiffs moved to set aside the order, arguing that Judge Wright recused himself prior to granting partial summary judgment. Seller filed a motion to dismiss, claiming that dismissal was appropriate because all claims had been ruled upon in his favor. He noted that the second amended complaint raised claims that had either been voluntarily dismissed or rejected following the hearing on the motion for summary judgment.

The case proceeded to a hearing before Chancellor Jenkins, who entered an order of final dismissal that provided as follows:

After hearing the statements and arguments of counsel, counsel answering questions of the Court and the Court's own review of the file and the law applicable to this case, the Court finds that the Order entered on July 7, 2015[,] granting Summary Judgment to [Seller] by Judge Wright is appropriate under the circumstances and that [Seller has] successfully negated [Plaintiffs'] ability to prove the allegations in their Complaint. This Court finds that Judge's Wright's Order of Summary Judgment was appropriate after an independent review of the file, the law, arguments and statements of counsel.

The Court finds that [Seller's motion to dismiss] is well taken since there are no other issues left to be decided in the case; therefore, the case should be dismissed.

This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether the trial court possessed the requisite subject matter jurisdiction to adjudicate the matter.

B.    Whether the trial court erred in dismissing the case in its entirety.

## III.    STANDARD OF REVIEW

The grant of a motion to dismiss is subject to a de novo review with no presumption of correctness. *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014). "In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Stewart v. Schofield*, 368 S.W.3d 457, 462 (Tenn. 2012). "A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal quotation and citations omitted).

# IV.    DISCUSSION

## A.

As a threshold issue, we must first address the question of the court's subject matter jurisdiction. *See* Tenn. R. App. P. 13(b) (providing this court with the authority to consider the trial court's subject matter jurisdiction whether or not the issue is raised on appeal). "The concept of subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citing *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988)). "Judgments or orders entered by courts without subject matter jurisdiction are void." *Id.* (citations omitted). Moreover, a trial court's lack of subject matter jurisdiction requires an appellate court to vacate the judgment and dismiss the action without reaching the merits of the appeal. *Id.*

Here, Judge Wright granted summary judgment on the TCPA claim *after* he entered an order of recusal and appointed Chancellor Jenkins to hear the case in his stead. This order is void and must be vacated because Judge Wright was without jurisdiction to further adjudicate the matter following the entry of an order of recusal. However, we need not dismiss the action without considering the merits of the appeal because a subsequent order was entered by Chancellor Jenkins, who possessed subject matter jurisdiction to adjudicate the matter based upon the entry of an interchange order.

## B.

Plaintiffs do not appeal the summary judgment dismissal of their TCPA claim. Instead, they argue that the court erred in dismissing the case in its entirety without addressing the outstanding claims not disposed of by the grant of summary judgment. They explain that their second amended complaint included claims for breach of common law and statutory warranties, violations of the TCPA, promissory estoppel,[3] and "piercing the corporate veil." Seller responds that dismissal was appropriate because the TCPA claim was the only remaining claim at the time of dismissal.

The record reflects that Plaintiffs voluntarily dismissed their breach of common law and statutory warranty claims prior to the hearing on the TCPA claim. Plaintiffs were granted leave to file a second amended complaint; however, such leave was limited to the filing of a potential claim concerning Seller's actions following the discovery of the defective nature of the product. Plaintiffs responded by re-filing the second amended

---

[3]Plaintiffs again refer to this claim as "breach of contract via estoppel."

complaint, with the addition of one sentence in further support of their TCPA claim. The re-filing of the same complaint was not in keeping with the court's grant of leave to amend; however, neither Judge Wright nor Chancellor Jenkins ruled upon the claim for promissory estoppel that was included in the first and second amended complaints.

While titled as a claim for "breach of contract by estoppel inducement by defendant" and inartfully drafted, the outstanding claim concerned Seller's actions following the discovery of the defective nature of the product. Indeed, Plaintiffs alleged in both the first and second amended complaint as follows:

> [Seller is] estoppeled [sic] to rely on any statute of limitations defense as [he has], on several occasions, induced Plaintiffs not to file any lawsuit and "make things right".

> In reasonable and detrimental reliance on these allegations, Plaintiffs continued to rely upon [Seller's] representations to "make things right".

> As a result of waiting on [Seller] to "make things right", Plaintiffs suffered diminution in value, lost rents, upkeep (utilities, insurance, taxes, etc.), loss of use, loss of sales, and loss of use of their money (prejudgment interest).

In Tennessee, "[p]romissory estoppel is explained as: 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999) (quoting *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1992) (quoting Restatement (Second) of Contracts § 90)); *see also Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006) (upholding denial of promissory estoppel claim because the reliance was unreasonable in light of the circumstances of the case). A plaintiff may not recover pursuant to a theory of promissory estoppel unless

> 1.  the detriment suffered in reliance [was] substantial in an economic sense;

> 2.  the substantial loss to the promisee in acting in reliance [was] foreseeable by the promisor; [and]

> 3.  the promisee . . . acted reasonable in justifiable reliance on the promise as made.

*Calabro*, 15 S.W.3d at 879. The doctrine of promissory estoppel is also referred to as "detrimental reliance" because the plaintiff must show not only that a promise was made, but also that the plaintiff reasonably relied on the promise to his detriment. *Id.* (quoting *Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 19-20 (Tenn. Ct. App. 1997)).

With these considerations in mind, we conclude that dismissal was prematurely granted when the trial court failed to address the outstanding claim of promissory estoppel. Upon remand, the trial court should also consider whether Seller may be held individually liable for his actions as pled by Plaintiffs.

## V. CONCLUSION

The decision of the trial court is reversed. The case is remanded for further proceedings. Costs of the appeal are taxed to the appellee, B.J. Broyles, doing business as Bargain Salvage and Ace Development, Incorporated.

_____
JOHN W. McCLARTY, JUDGE