# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 18, 2020 Session

## SUSAN SMITH RAWLS v. DANIEL WEXLER RAWLS

**Appeal from the Circuit Court for Knox County**
**No. 137223     Gregory S. McMillan, Judge**

_____

### No. E2019-00675-COA-R3-CV

_____

This appeal arises from the divorce of Susan Smith Rawls ("Wife") and Daniel Wexler Rawls ("Husband"). Wife sued Husband for divorce in the Circuit Court for Knox County ("the Trial Court"). After a trial, the Trial Court, *inter alia*, divided the marital estate and awarded Wife alimony and child support. Husband appeals to this Court raising a host of issues. However, Husband's brief is non-compliant with the Rules of the Tennessee Court of Appeals and the Tennessee Rules of Appellate Procedure to such a degree that his issues are waived. Wife raises an additional issue of her own as to whether Husband is obligated, either by an oral contract he allegedly entered into or through promissory estoppel, to pay the college expenses of one of the parties' adult children. The evidence does not preponderate against the Trial Court's finding that Husband never committed to pay these college expenses. Wife also requests an award of attorney's fees incurred on appeal. We decline to grant such an award. We affirm the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Mary L. Ward, Knoxville, Tennessee, for the appellant, Daniel Wexler Rawls.

Thomas M. Leveille, Knoxville, Tennessee, for the appellee, Susan Smith Rawls.

# OPINION

## Background

Husband and Wife were married in 1996. Two children were born of the marriage, both of whom have reached the age of majority: Shelby Grace Rawls, born in May 1999, and Dawson Rawls, born in February 2002. In 2015, Husband and Wife separated. In June 2016, Wife sued Husband for divorce in the Trial Court. This matter was tried over the course of eight days in August, November, and December of 2018. One dispute at trial was whether Husband had promised to pay for Shelby Grace's college education. Wife asserts Husband undertook this obligation. Husband denies he did.

In December 2018, the Trial Court entered its detailed order of divorce. The Trial Court found that Husband never committed to pay individually for Shelby Grace's college education. The Trial Court stated, as relevant:

> [T]he parties highly contest the issue of whether Husband is obligated to pay the college expenses of the parties' daughter. The Court finds the following facts regarding the issue of college and who should pay for it. The parties' daughter graduated from Farragut High School in May 2017 with a grade point average above 4.0. As is customary, she investigated a number of colleges. Of the five or six that she was serious about, two of the colleges were in Tennessee, but the remainder were not. At the time that the parties' daughter was considering colleges, she was already estranged from her Father and the parties had been separated for approximately two years. There were a number of informal conversations between the parties' and their daughter and as a group. Husband was very proud of his daughter's accomplishments and told her that "she could go anywhere she wanted to go." Husband denies he ever said that he would be solely responsible for the cost of her college. The parties' daughter chose to attend the College of Charleston. Wife and the parties' daughter drove down a day earlier than Husband to begin the process of moving into the dorm. Because Husband arrived a day later, Wife was responsible for handling the initial paperwork regarding the payment of tuition, fees, room and board. Husband did not personally sign any documentation committing him to paying any portion of their daughter's college expenses.
> 
> Over the course of their daughter's first year of college, Husband provided her with at least one credit card to be used for her necessities. He also directed her in the method by which the monthly payments for tuition,

fees, room, and board were to be paid to the college. He then transferred funds to cover the cost on a debit card or otherwise paid the bill for her tuition, fees, room and board. The source of the funds to pay the college expenses was a marital asset, i.e., the income from the parties' BNI franchises. During this time, Husband complained about the amount that Wife and the parties' daughter were spending and attempted to implement limits for their daughter's spending.

In late fall of 2017, Husband and the parties' daughter had a verbal altercation. During this period of time, Husband was aware that he would not be continuing as a BNI franchisee and that the parties' interests had to be sold. He informed Wife and their daughter that he would pay only one-half of her college expenses, with the amount he would pay capped at the level for instate costs at the University of Tennessee. Despite this declaration, Husband ensured that all the college and living costs for the 2017-18 academic year were paid. For 2018-19, Husband has refused to pay any of the college expenses. This year, the parties' daughter has moved off campus and is sharing a residence and utilities with three other students. While Wife has paid the child's college and living expense not covered by the child's own income, she has necessarily used marital funds to do so, with the effect being that Husband has also actually paid one-half of the cost.

The Court holds that the facts do not establish an oral contract sufficient to obligate Husband to pay the remaining two and a half years of tuition, fees, room and board for the parties' daughter as she completes her education at the College of Charleston. The Court does not find that Husband committed to individually paying the cost by informing their daughter that she "could go anywhere she wanted to." Finally, the Court does not find that promissory estoppel applies to the facts as found by the Court. Husband has no legal obligation to contribute to the college education of the parties' daughter.

In January 2019, Husband filed a motion pursuant to Tenn. R. Civ. P. 59 seeking to alter or amend the judgment or for a new trial. Wife filed a response in opposition. In March 2019, the Trial Court entered an order amending its December 2018 order in certain respects not material to this appeal. Husband timely appealed to this Court.

## Discussion

Although not stated exactly as such, Husband raises the following eleven issues on appeal: 1) whether the Trial Court erred in setting child support; 2) whether the Trial Court erred in calculating alimony; 3) whether the Trial Court erred in determining that

the Navigator condominium is marital property; 4) whether the Trial Court properly divided the tax refund; 5) whether the Trial Court erred in ordering that the tax return be completed by April 15, 2019; 6) whether the Trial Court erred in failing to consider a $62,291.00 decrease in the value of the accounts awarded to Husband from the date of the last hearing until entry of the December 31, 2018 order; 7) whether the Trial Court erred in failing to require Wife either to refinance or pay off the mortgage on the residence; 8) whether the Trial Court erred in failing to assess the value of Husband's separate Weller property and the funds received from the sale of Husband's separate property condominium; 9) whether the division of BNI, TN was proper; 10) whether the Trial Court erred in its overall division of the marital estate; and 11) whether the Trial Court properly considered the tax ramifications.[1] Wife raises three additional issues of her own, which we restate somewhat as follows: 1) whether Husband's brief is deficient to the point that he has waived his issues on appeal; 2) whether the Trial Court erred in declining to find that Husband was obligated, either by an oral contract or the doctrine of promissory estoppel, to pay for Shelby Grace Rawls' college and living expenses while she attends the four-year college of her choice; and 3) whether Wife is entitled to an award of attorney's fees incurred on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address Wife's issue of whether Husband's brief is deficient to the point that he has waived his issues on appeal. Indeed, Husband's brief is very deficient. First, certain of Husband's issues pertain to the valuation, classification and division of property, as well as debts. However, Husband's brief lacks a table of the property or debt at issue. Rule 7 of the Rules of the Tennessee Court of Appeals provides, as relevant:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1)

---

[1] There is some discrepancy between our copies of Husband's brief. One version identifies eight issues but argues eleven, whereas another version identifies and argues eleven issues. In one version, there is no statement of facts, statement of the case, or standard of review, while the other contains these sections. For reasons we discuss, even the more complete version of Husband's brief is highly deficient.

all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

Rule 7 proceeds to give an example of the type of table to be provided. Husband has failed to include a table in his brief even though Rule 7 clearly applies to a number of his issues. This Court has warned:

[W]here an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements. This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property. This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7.

*Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at \*8 (Tenn. Ct. App. June 30, 2010) (citations and quotation marks omitted), *no appl. perm. appeal filed*.

Husband's brief is deficient in other ways. Tenn. R. App. P. 27(a)(6) requires that an appellant's brief contain "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record." In addition, Rule 27(a)(7)(A) requires "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." Along similar lines, Rule 6 of the Rules of the Tennessee Court of Appeals provides, as pertinent:

(a) Written argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Beyond the absence of a Rule 7 table which we have addressed, the deficiencies in Husband's brief are wide-ranging. Husband cites very little legal authority. For seven of Husband's eleven issues, he cites no legal authority at all. On the issue of child support, Husband cites to Tennessee law reflecting that child support decisions precede decisions about alimony because the former affects the ability of a party to pay the latter. That is all. There are no references to child support guidelines or pertinent caselaw supporting his specific contentions of error. Husband just asserts in a conclusory way that the Trial Court erred in certain ways. This is a recurring problem in Husband's brief.

Apart from citing little authority, Husband cites to the record only scarcely. This is particularly problematic in a case as factually-intensive as this one. The record consists of two volumes of technical record, eleven volumes of transcript, and 97 exhibits. While Husband cites to trial exhibits and the technical record at rare intervals, he never cites to the transcripts from the eight-day trial. For five issues, Husband fails to cite to the record at all. In addition, Husband's statement of facts contains no citations to the record, which undermines the purpose of that section.

Failure to cite facts in the record or legal authority where appropriate as required by Rule 27 may result in the waiver of an appellant's issues. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). As our Supreme Court has explained, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). Husband's failure to include a Rule 7 table is fatal to those issues of his pertaining to the valuation, classification and division of property, as well as debts. Husband's other issues are supported so scantily

by facts or legal authority that to salvage them we would have to serve as Husband's de facto counsel. Doing so would place Wife at an impossible disadvantage and is not our role. While this Court may suspend the requirements of its rules for "good cause," *See* Tenn. R. Ct. App. 1(b), the deficiencies in Husband's brief are too severe to be overcome. We, therefore, find Husband's issues waived.

We next address Wife's issue of whether the Trial Court erred in declining to find that Husband was obligated, either by an oral contract or the doctrine of promissory estoppel, to pay for Shelby Grace Rawls' college and living expenses while she attends the four-year college of her choice. Wife cites the case of *Johnson v. Lockhart*, No. M2002-00623-COA-R3-CV, 2003 WL 22068240 (Tenn. Ct. App. Sept. 5, 2003), *no appl. perm. appeal filed*, for the proposition that an oral contract between parents to pay for their child's college education is enforceable. In *Johnson*, a mother brought a claim against her former husband for failure to follow through on an agreement to share their child's college expenses. *Id*. at *3. The mother prevailed, and the father appealed. *Id*. On appeal, we affirmed, finding among other things that "[t]he evidence certainly does not preponderate against the finding of the trial court of a bi-lateral oral contract to pay equally the net expenses of Greg Lockhart at the University of Miami for four years." *Id*. at *5. We found further:

> In this case, part performance by both parties is conclusively established, as both of them paid their respective shares of the net expenses for Greg at the University of Miami through the first two semesters. While it is true that such payment would be consistent with a mere voluntary payment by both parties, which could be discontinued at any time, the trial court has made the factual determination that the oral contract was a four year contract. The evidence does not preponderate against that crucial finding of fact, as the payments by both parties are clearly in partial performance of the four year contract. The statute of frauds is, thus, inapplicable. . . .

*Id*. at *6. In *Johnson*, we also affirmed the trial court's alternative basis for its judgment—the doctrine of promissory estoppel—stating "[t]he trial court held that the representations and the actions of Mr. Lockhart were adequate to supply the necessary elements of inducement and reliance, and the evidence does not preponderate against such finding." *Id*. at *7. For additional precedent, Wife cites to another opinion, *Calabro v. Calabro*, 15 S.W.3d 873 (Tenn. Ct. App. 1999). Like *Johnson*, *Calabro* addresses a parent's obligation to pay for an adult child's college education. *Id*. at 874. However, in *Calabro*, the plaintiff was the defendant's daughter. *Id*. Wife has thus cited Tennessee precedent reflecting that a parent may bind himself or herself to pay for an adult child's college education; the question is whether Husband did so.

At trial, Shelby Grace Rawls testified that she attends the College of Charleston, which is located in Charleston, South Carolina. She intends to go there for four years. Shelby Grace stated that early on, she had discussions with her father about where she wanted to go to school. According to Shelby Grace, Husband's reaction to her wanting to go to a four-year college was "[g]reat, I support you." Shelby Grace testified that her father never asked her to pay. However, Shelby Grace testified that had she known she would ever have to pay her own college expenses, she would have stayed home and gone to Pellissippi for free.

Wife testified on the subject, as well. According to Wife, Husband told Shelby Grace "you can go wherever you want." Wife described Husband's pride at Shelby Grace's plans for school:

> Dan was the one that ultimately said, you may go wherever you want, I'm so proud of you, Shelby Grace. And at the time if he may recall or not, he was very emotional, because he was proud of her. And so she wasn't told at sixteen, this is the budget you have for college. She wasn't told go get a job, none of that. She was -- and I was as a wife under the impression there was plenty of money there which clearly there is if you've seen our accounts. And that this is what she was told. . . .

In his testimony, Husband denied ever making an unequivocal promise that he would pay for Shelby Grace's college education. Husband stated that the discussion was "[t]hat her mom and I would support her." Husband testified, however, "I never said, I'll pay for your college." Husband stated that afterward he lost his business and moved out. When asked if he felt that he should not be responsible for Shelby Grace's college expenses because of his changed situation, Husband testified "[t]hat's right."

In view of this record, it is unclear under Wife's theory who is supposed to be party to the alleged oral agreement. This lawsuit before us is between Husband and Wife. Shelby Grace is not a party. As between Husband and Wife, we find no evidence in the record of a commitment by Husband to Wife to pay Shelby Grace's college expenses. A parent encouraging his or her child to go to college and even expressing a general willingness to pay does not, in itself, necessarily bind that parent to pay for that child's college education. Husband's mere encouragement of Shelby Grace and general expressions of support do not give rise to a contract, nor did Husband state anything so definite as to warrant application of promissory estoppel. The Trial Court made detailed findings of fact relative to this issue. From our review of the record, we conclude that the evidence does not preponderate against the Trial Court's factual findings. We affirm the Trial Court on this issue.

-8-

The final issue we address is Wife's issue of whether she should be awarded attorney's fees incurred on appeal. This Court has discussed the factors that go into our decision-making when a party requests an award of appellate attorney's fees as follows:

> An award of appellate attorney's fees is a matter within this Court's sound discretion. When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case.

*(Cooley) v. Cooley*, 543 S.W.3d 674, 688 (Tenn. Ct. App. 2016) (quotation marks and citations omitted).

In her brief, Wife argues that the severe deficiency of Husband's brief reflects the bad faith of his appeal. In contrast, Wife points to her own thorough response to all of Husband's issues, notwithstanding the severe problems with his brief, as evidence of her good faith. However, Wife concedes that she has the ability to pay her attorney's fees. We note further that Wife lost on the separate issue she raised. Exercising our discretion in consideration of all relevant equitable factors, we decline to grant Wife an award of attorney's fees incurred on appeal. We affirm the judgment of the Trial Court in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed 50% against the Appellant, Daniel Wexler Rawls, and his surety, if any, and 50% against the Appellee, Susan Smith Rawls.

_____
D. MICHAEL SWINEY, CHIEF JUDGE