IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2017 Session

## L.J. JACKSON, ET AL. v. CITIMORTGAGE, INC.

**Appeal from the Chancery Court for Shelby County**
**No. CH-14-1217    James R. Newsom, Chancellor**

───────────────────────────────

**No. W2016-00701-COA-R3-CV**

───────────────────────────────

This appeal involves a dispute between a loan servicer and a family who subsequently defaulted on a mortgage for a piece of property. The loan servicer foreclosed and sold the property according to the express terms of the mortgage note and deed of trust after the family had been in default for multiple years and after multiple failed attempts to seek loan modification. The family sued for breach of contract and the covenant of good faith and fair dealing, promissory estoppel, and intentional misrepresentation, asserting that the loan servicer promised to postpone the foreclosure sale until after completion of the most recent loan modification review process. The trial court granted summary judgment to the loan servicer on all claims. The family appealed on all four issues. We affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Webb Alexander Brewer, Memphis, Tennessee, for the appellants, L. J. Jackson and Brenda Jackson.

Nicholas Henry Adler, Brentwood, Tennessee, for the appellee, CitiMortgage, Inc..

**OPINION**

## I.  BACKGROUND

This appeal arises from a contract dispute between CitiMortgage, Inc. ("Citi") and Brenda and L.J. Jackson (collectively "the Jacksons" and individually "Mr. Jackson" and "Mrs. Jackson"). We find the findings of fact provided by the trial court to be an exhaustive and relevant summation of the record, and we draw from them below.

On May 26, 2005, the Jacksons refinanced the mortgage on their house and property located on Ross Creek Drive in Memphis, Tennessee ("the Property"). They refinanced and obtained a new loan from Argent Mortgage Company, LLC ("Argent"). Under the terms of the refinancing and to obtain the new loan, the Jacksons executed two documents. The first document, executed May 26, 2005, was a 30-year adjustable rate mortgage note ("the Note") in the amount of $118,750 owed to Argent. The second document, executed June 10, 2005, was a deed of trust ("the Deed") conveying a security interest in the Property to Lender (here, Argent).

The Note required monthly payments by the Jacksons. In the event of the Jacksons' default, the Note allowed the Lender to enforce the security interest guaranteed by the Deed by accelerating the debt and the eventual sale of the Property in a foreclosure proceeding.

Further, the Note contained a provision allowing for the free, alienable transfer of the Note by Lender (originally Argent) to another party. Whosoever possesses the Note and has the right to receive payments under it is the "Note Holder." The Note also provided in pertinent part:

> Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms Borrower(s) and Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this note, must be in a signed writing to be legally enforceable.

On July 1, 2008, Argent transferred the servicing of the Jacksons' mortgage to Citi. The previous month, Argent had provided written notice to the Jacksons that their mortgage was being "assigned, sold or transferred" to Citi and that future payments would be owed to Citi. The notice further stated that the assignment, sale, or transfer of the mortgage loan "does not affect any terms or conditions of the mortgage instruments, other than the terms directly related to the servicing of your loan."

Due to the adjustable rates and the recession beginning in 2008, the Jacksons first defaulted on payments on their mortgage on October 1, 2008. The Jacksons remained in default thereafter until the initiation of this lawsuit. After three months, Citi notified the

Jacksons that it would only accept full payment for the past due payments to satisfy the arrearage.

At some point, the Jacksons began the loan modification process in an attempt to salvage their mortgage and their ownership of the Property. The testimony is disputed. The Jacksons claim that they began the loan modification process before default on October 1, 2008; Citi denies this. The Jacksons assert that an unnamed Citi employee told them to cease payments to assist them in qualifying for a loan modification; Citi denies this. The trial court did not find this information material to Citi's motion for summary judgment.

Citi sent the Jacksons a letter on December 10, 2010, notifying them that failure to cure the default for the past due amount of $26,375.09 by January 10, 2011 would result in acceleration of the debt and subsequent foreclosure proceedings as permitted under the Note and the Deed. By that date, the Jacksons would have been in default for over 26 months. The Jacksons failed to cure the default by January 10, 2011, and Citi accelerated the debt in an effort to seek eventual foreclosure on the home.

At some point prior to June 30, 2011, the Jacksons sought loan modification assistance from Citi. While the exact date this process began is unclear from the record, Citi mailed the first Home Affordable Modification Program ("HAMP") denial letter to the Jacksons on June 30, 2011. Citi mailed the Jacksons similar denial letters for HAMP and other loss mitigation options on November 25, 2013, June 5, 2014, and June 16, 2014.

In late March 2014, the Jacksons received noticed from Brock & Scott, PLLC that foreclosure proceedings were being started regarding the Property. As required by the Deed, Citi named Brock & Scott Substitute Trustee so as to conduct the foreclosure proceedings on or about April 8, 2014. The Jacksons received a letter on April 29, 2014 from Brock & Scott notifying them that the foreclosure sale would take place on May 27, 2014.

Although the record is unclear of the specific date, the Jacksons hired Chris Mitchell ("Mrs. Mitchell") of Everything Financial Company to aid them in the loan modification/HAMP process after Citi denied the Jacksons' loss mitigation options. Mrs. Mitchell exchanged emails with an employee of Citi, Stephen Ortwerth (a Making Homes Affordable Executive Response Unit Specialist) regarding the Jacksons' loan modification application. Those emails form the bulk of the Jacksons' evidence of alleged contractual malfeasance on Citi's part. The pertinent parts are reproduced below.

Through Mrs. Mitchell, the Jacksons submitted documentation as requested by Mr. Ortwerth and Citi. Through the loan modification process and her communications with Citi, Mrs. Mitchell obtained a postponement of the foreclosure from May 27, 2014,

until June 24, 2014. Brock & Scott notified the Jacksons of the postponement through certified mail postmarked on May 28, 2014. The foreclosure was again postponed until July 29, 2014, and Brock & Scott similarly sent the Jacksons notice of postponement on June 25, 2014, the day after the second foreclosure date. Mrs. Mitchell also informed the Jacksons of the second postponement.

In a June 24, 2014 email, Mr. Ortwerth notified Mrs. Mitchell that he was monitoring the Jacksons' HAMP review and that he would notify Mrs. Mitchell of the decision by July 1, 2014. In a July 21, 2014 email, Mrs. Mitchell sent the following email to Mr. Ortwerth:

> Good afternoon Mr. Ortwerth,
>
> Thank you for this communication. However, I am a bit concerned. There is a posted sale date for July 29, 2014. I am a bit concerned, inasmuch as I have not received communication within the last 12 days. Is there a requirement for further documentation? If so, please advise. Thank you.

Mr. Ortwerth responded to Mrs. Mitchell in an email on July 22, 2014, requesting additional documentation from the Jacksons:

> I hope you're well. Our Underwriter has requested some additional information from your client to complete their review file.
> -   [P]rovide supporting documents for L.J.'s new employment position
> -   2014 year-to-date profile and loss statement for Brenda
> -   most recent statement (all pages) for Orion Federal Credit Union showing schedule C income
> -   [P]rovide three months proof of boarder income: bank statements and copies of canceled rent checks . . . .
>
> I need this information as soon as possible and will follow up to confirm receipt or check progress by 07/29/14.

As noted by the trial court in its findings of fact, none of these emails contain an explicit or implicit promise to postpone or cancel the foreclosure scheduled for July 29, 2014. The Jacksons' amended complaint asserts that Mrs. Mitchell told the Jacksons that the foreclosure sale was again postponed. This assertion is unsupported in the record insofar as it departs from Mrs. Jackson's testimony and affidavit asserting so.

- 4 -

However, the Jacksons also assert that Mrs. Mitchell communicated that Citi needed more documentation, as clearly revealed in Mr. Ortwerth's final email to Mrs. Mitchell. The Jacksons submitted the required documentation to Mrs. Mitchell. Citi subsequently never received the documentation. The Property was sold to Citi at the foreclosure sale on July 29, 2014. The Jacksons later received notice that the Property had been sold by a real estate agent representing Citi.

The Jacksons submitted their initial Petition to set aside Foreclosure, for Injunctive Relief, and Money Damages on August 12, 2014. They alleged intentional misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing. An amended complaint added the promissory estoppel cause of action. Citi answered the amended complaint and counterclaimed, arguing that it had legal possession of the Property and for attorney's fees as allowed by the Deed.

Citi filed a motion for summary judgment and a memorandum in support. Citi argued that the breach of contract and promissory estoppel claims were barred by the express terms of the Note (requiring a writing for any modification) and the Statute of Frauds because the Jacksons' assertions dealt with a "promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise . . . to lend money or extend credit." Tenn. Code Ann. § 29-2-101(b)(1). Citi asserted that it did not breach the covenant of good faith and fair dealing because the Note and Deed contained no provisions or obligations to give the Jacksons loan modification. Citi further argued that the doctrine of good faith and fair dealing cannot be used to create rights and obligations that did not exist under the terms of the Note and Deed. Citi claimed that it was also not liable for intentional misrepresentation because the alleged statements involved a future act, not statements of a present or past fact. We omit the other arguments for other claims because they are not raised on appeal.

The Jacksons responded in opposition. Both parties filed statements of undisputed material facts and responses to each other's statements. Citi filed extensive affidavits, including testimony of various Citi employees, including Mary Coleman and Travis Nurse and other relevant documentation, such as the Deed, Note, Appointment of Substitute Trustee documents, and a Substitute Trustee's Deed. The Jacksons filed an affidavit containing Mrs. Jackson's testimony concerning disputed aspects of the case. The Jacksons filed a second amended complaint, including additional causes of action for violations of various federal fair lending and fair debt collection statutes and regulations promulgated thereunder.

The trial court ultimately granted summary judgment on the breach of contract claim because there was no writing by which Citi promised the Jacksons it would hold off the foreclosure while the loan modification process was proceeding. Thus, the court held the claim was barred under Tennessee's Statute of Frauds found at Tennessee Code Annotated section 29-2-101 and under the express terms of the Note barring any

modifications except by writing.

The trial court similarly granted summary judgment in favor of Citi on promissory estoppel grounds. It held that the undisputed facts, especially the email chain between Mrs. Mitchell and Mr. Ortwerth, show that no unambiguous promise, an essential element in promissory estoppel, was ever communicated to the Jacksons by Citi. The trial court did not reach the Statute of Frauds defense for the promissory estoppel claim.

Additionally, the trial court granted summary judgment for the breach of the covenant of good faith and fair dealing cause of action in favor of Citi. The court found that nothing in the express terms of the Deed or the Note required or obligated Citi to grant the Jacksons a loan modification or an opportunity to do so. Therefore, there was no duty that Citi could have failed to execute in good faith. The court denied the Jacksons' contention that the duty of good faith and fair dealing adds additional obligations, such as offering a loan modification. The court also found that no oral contract was created via discussions between Citi and the Jacksons and further, that the terms of the Deed and the Note exclude the possibility of an oral contract.

The trial court similarly granted summary judgment in favor of Citi on the intentional misrepresentation claims. The court held that the email chain between Mrs. Mitchell and Mr. Ortwerth did not create any promise or constitute representation of information that was false. Additionally, the court found Mrs. Jackson's affidavit asserting that Mrs. Mitchell communicated that the sale was postponed to the Jacksons unpersuasive. The court found no evidence in the record suggesting that any such information or promise was transmitted from Mr. Ortwerth to Mrs. Mitchell.

The trial court also granted Citi's motion regarding a claim under Tennessee Code Annotated section 35-5-107, concerning the validity of the foreclosure sale and Citi's title and right of possession to the Property. The court denied Citi's motion for violation of the Truth-In-Lending Act but later granted a motion to alter or amend, granting summary judgment on the Truth-In-Lending Act claim and awarding attorney's fees to Citi. These issues are not raised on appeal. This timely appeal followed.

## II. ISSUES

We have consolidated the four issues raised by the Jacksons on appeal as follows:

1. Whether the trial court properly granted summary judgment to Citi on the Jacksons' breach of contract claim.

2. Whether the trial court properly granted summary judgment to Citi on the Jacksons' promissory estoppel claims.

3. Whether the trial court properly granted summary judgment to Citi on the Jacksons' claim for breach of the covenant of good faith and fair dealing.

4. Whether the trial court properly granted summary judgment to Citi on the Jacksons' intentional misrepresentation claim.

## III. STANDARD OF REVIEW

A trial court's ruling on a motion for summary judgment is reviewed de novo, with no presumption of correctness. *Russell v. HSBC Mortgage Servs., Inc.*, No. M2015–00197–COA–R3–CV, 2016 WL 1588091, at *11 (Tenn. Ct. App. Apr. 15, 2016) (citing *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). In doing so, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Greeze v. Tennessee Farmers Mut. Ins. Co.*, No. E2016-00792-COA-R3-CV, 2017 WL 1163680, at *4 (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Tennessee Supreme Court in *Rye* succinctly laid out the processes and principles of summary judgment. A moving party that "does not bear the burden of proof at trial . . . may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. "A moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis." *Id.* "Tennessee Rule 56.03 requires the moving party to support its motion with 'a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial.'" *Id.* (citing Tenn. R. Civ. P. 56.03). "'Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record.'" *Id.* (citing Tenn. R. Civ. P. 56.03).

After the moving party so moves, "any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03." *Id.* "'[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56],' to survive summary judgment, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond,

and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* (citing Tenn. R. Civ. P. 56.06).

The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)). The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. *Id.*

Summary judgment should be granted when the nonmoving party's evidence at the summary judgment stage is "insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04). If the moving party does not meet its initial burden of production, the nonmoving party's burden is not triggered and the motion for summary judgment should be denied. *Town of Crossville Hous. Auth.,* 465 S.W.3d 574, 578 (Tenn. Ct. App. 2014) (citations omitted).

In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.,* 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence,* 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995).

## IV. DISCUSSION

### A. Breach of Contract

First, we examine whether the trial court properly granted summary judgment to Citi for the Jacksons' breach of contract claim. The court held that Citi both negated an essential element of the Jacksons' claim and demonstrated the Jacksons' evidence at the summary judgment stage was insufficient to establish their claim. The court held that the Jacksons failed to point to specific facts supporting their claim. We agree.

A plaintiff raising a breach of contract claim must prove the following elements at trial: (1) the existence of an enforceable contract, (2) breach of the contract, and (3) damages caused by the breach. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citing *Custom Built Homes v. G.S. Hinsen Co., Inc.,* No. 01A01-9511-CV-00513, 1998 WL 960287 (Tenn. Ct. App. Feb. 2, 1998)). A mortgage or deed of trust is "a conveyance of an estate or an interest in land . . . within the meaning of the Statute of Frauds." *Lambert v. Home Fed. Sav. & Loan Ass'n,* 481 S.W.2d 770,

772–73 (Tenn. 1972) (citations omitted).

The pertinent Statute of Frauds provisions codified at Tennessee Code Annotated section 29-2-101 state the following:

> No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, *or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit*, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, *shall be in writing* and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.
>
> (2) A promise or commitment described in subdivision (b)(1) need not be signed by the lender or creditor, if such promise or commitment is in the form of a promissory note or other writing that describes the credit or loan and that by its terms:
>
> > (A) *Is intended by the parties to be signed by the debtor but not by the lender or creditor*;
> > (B) Has actually been signed by the debtor; and
> > (C) Delivery of which has been accepted by the lender or creditor.

Tenn. Code Ann. § 29-2-101(b)(1)-(2) (emphasis added). Further, we are guided by well-settled principles and general rules of construction. "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Dick Broadcasting Co., of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (citing *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). We initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are "contained within the four corners of the contract." *Id.* (citing *Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011)). The literal meaning of the contract language controls if the language is clear and unambiguous. *Id.* (citing *Allmand*, 292 S.W.3d at 630).

Citi asserts that the breach of contract claim was presumptively barred by both the Statute of Frauds and the express terms of the Note because the alleged contract would be altering or modifying an already existing agreement to lend money or extend credit. Citi further argues that the Jacksons' communications with Citi are too vague to constitute an oral modification of the Note or Deed and did not constitute a new or altered agreement.

The Jacksons argue that Citi breached a contract both to process the loan modification application to completion and to postpone the foreclosure. They argue this alleged agreement does not constitute an agreement to "alter, amend, renew, extend or otherwise modify or supplement any written promise agreement or commitment to lend money or extend credit" so as to fall within the purview of the Statute of Frauds or the express terms of the Note. Tenn. Code Ann. § 29-2-101(b)(1). They further argue that this contract is the result of oral statements by Citi agents and email correspondence between the Jacksons' agent and Mr. Ortwerth. We find their arguments unpersuasive.

The record, even viewed in the light most favorable to the Jacksons with all reasonable inferences drawn in their favor, does not support their contentions. First, we agree with the trial court's sound analysis that the terms of the Note, requiring a "signed writing" for any modifications or subsequent agreements relating to the Note or the Deed, do not fall within any of the exceptions in Tennessee Code Annotated section 29-2-101(b)(2). Specifically, the literal meaning of the "clear and unambiguous" terms of the Note controls here. *Dick Broadcasting Co.*, 395 S.W.3d at 659. A "signed writing" does not constitute a requirement that *only* the debtor, here the Jacksons, must sign any subsequent agreement between the Lender and the Borrower. Therefore, we can proceed to whether the Jacksons' claim is barred under section 29-2-101(b)(1) of the Statute of Frauds and the express terms of the Note.

The Jacksons' assertion that *Vaughter v. BAC Home Loans Servs., LP* supports their position is without merit. *See* No. 3:11-cv-00776, 2012 WL 162398, at *7 (M.D. Tenn. Jan. 19, 2012). In ruling on a motion to dismiss, the federal district court in that case found that such an alleged agreement to "consider or offer" a loan modification was "too vague" to constitute a legally enforceable promise. *Id.* In the instant case, the Jacksons alleged a promise by Citi to complete the loan modification review process and postpone foreclosure proceedings. The *Vaughter* decision clearly provided that a promise to modify a loan would fall under the Statute of Frauds. *Id.* at *9.

This is a distinction without a difference. A promise to complete the loan modification review process and, more importantly, postpone the foreclosure proceedings would constitute modifying the "clear and unambiguous" literal terms of the Deed which provide Citi with clear rights to accelerate the debt and proceed to foreclosure if the Jacksons defaulted. *Dick Broadcasting Co.*, 395 S.W.3d at 659. Citi exercised those rights, and the Jacksons sought to modify those contractual rights by postponing the foreclosure while the review process was ongoing. Therefore, we hold that the alleged promise to complete the loan modification review and postpone the foreclosure does in fact constitute modifying the Note and Deed, which is a modification of an agreement to extend or lend credit. Thus, the alleged promise falls under the respective umbrellas of the Statute of Frauds and the terms of the Note requiring a signed writing by both parties. A signed writing by both parties was required to enforce the promise alleged by the

Jacksons.

Citi has successfully shown that the record is devoid of any written, memorialized agreement between the parties that Citi would process the Jacksons' loan modification and postpone the foreclosure. Citi met its burden of production and successfully negated an essential element of the breach of contract claim and demonstrated that the evidence was insufficient owing both to the terms of the Note and the Statute of Frauds. *Rye,* 477 S.W.3d at 264-65. The burden was properly shifted to the Jacksons.

The Jacksons point to the emails between Mr. Ortwerth and Mrs. Mitchell as implicit proof of an agreement between the parties, but the email chain does not provide any proof of a promise by Citi, or any new agreement, or a modification of the Deed or Note. At best, Citi's agent requested documents from the Jacksons and told Mrs. Mitchell he would keep in touch during the loan modification review process. While it is possible Citi may have failed to notify Mrs. Mitchell or the Jacksons of the result of the review process, this is merely speculation unsupported by the record. Further, owing to the factual gap left by the untimely passing of Mrs. Mitchell, the evidence is undisputed that Citi never received the requested documents from Mrs. Mitchell. More importantly, nothing in the record suggests a new contract or modification was made via these communications. No rational trier of fact could find a new contract, a modification of a prior contract, or a promise here, even stretching these emails to their furthest logical conclusions.

The Jacksons assert agents of Citi made oral representation to the Jacksons (and later to Mrs. Mitchell) encouraging them to begin the loan modification process, to cease payments during the review, and to submit numerous documents which led them to believe Citi would postpone the foreclosure and review their loan modification to completion for possible acceptance or denial. Any alleged oral contract or modification is presumptively barred by both the Statute of Frauds and the express terms of the Note. As such, the Jacksons' evidence at the summary judgment stage was "insufficient to establish the existence of a genuine issue of material fact for trial." *Rye,* 477 S.W.3d at 265. No rational trier of fact could find in favor of the Jacksons on the breach of contract claim, even viewing the evidence in the light most favorable to them and drawing all reasonable inferences in their favor. *Id.* at 264 (citations omitted).

For the foregoing reasons, we hold that the Jacksons did not carry their burden of production and that the trial court properly granted summary judgment on the breach of contract claim. We do not address the vagueness claim as we find the issue summarily resolved by the Statute of Frauds and the express terms of the Note.

## B. Promissory Estoppel

Second, we determine whether the trial court properly granted summary judgment

to Citi on the Jacksons' promissory estoppel claim.

In *Alden v. Presley*, the Tennessee Supreme Court elaborated that "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." 637 S.W.2d 862, 864 (Tenn. 1972) (quoting Restatement of Contracts § 90). *See also Barnes & Robinson Co. v. OneSource Facility Servs.*, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006) (quoting *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999) (upholding denial of promissory estoppel claim because the reliance was unreasonable in light of the circumstances of the case); *Bridgeforth v. Jones*, No. M2013–01500–COA–R3–CV, 2015 WL 336376, at \*25 (Tenn. Ct. App. Jan. 26, 2015) (citations omitted) (upholding denial of promissory estoppel claim for failure to show "substantial economic detriment").

Limitations to promissory estoppel exist, but the doctrine is not to be applied liberally. *Barnes*, 195 S.W.3d at 645. Rather, it should only be applied in "exceptional cases." *Id.* (citing *Shedd v. Gaylord Entm't Co.*, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003)). A plaintiff may not recover pursuant to a theory of promissory estoppel unless "(1) the detriment suffered in reliance [was] substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance [was] foreseeable by the promisor; (3) the promisee . . . acted reasonably in justifiable reliance on the promise as made." *Id.* (quoting *Calabro*, 15 S.W.3d at 879).

Most importantly for the instant case, a plaintiff must show that a promise was made, see *Calabro*, 15 S.W.3d at 879 (citing *Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 19–20 (Tenn. Ct. App. 1997)), and the promise must be "unambiguous and not unenforceably vague." *Amacher v. Brown–Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991); *see also Smith v. Hi-Speed, Inc.*, No. W2015-01613-COA-R3-CV, 2016 WL 4546057, at \*19 (Tenn. Ct. App. Aug. 30, 2016) (affirming summary judgment on promissory estoppel claims for oral promise to pay plaintiff a monthly amount sufficient to cover loan payments for twenty years as "unenforceably" vague).

While conceding in their brief that no explicit promise was made, the Jacksons argue that a reasonable inference can be drawn that promises to complete their loan review process and to postpone the foreclosure were made in light of the existing circumstances. The Jacksons subsequently assert they reasonably relied on these promises and suffered damages as a result. Conversely, Citi argues the Jacksons' evidence is insufficient to find the first element of a promissory estoppel claim, an unambiguous enforceable promise. Citi also argues that the Statute of Frauds bars the Jacksons' claim. We find Citi's argument more compelling.

The Jacksons' own admissions in the record and in their brief are sufficient to

- 12 -

resolve this issue. The Jacksons admit that no explicit promise by Citi to them exists in the email chain. It is, no doubt, unfortunate that the only other person who communicated with Citi and allegedly received a promise from Citi, according to Mrs. Jackson's testimony, died before this lawsuit commenced. The fact remains that the record is devoid of any evidence that Citi ever communicated a promise to Mrs. Mitchell or the Jacksons to complete the loan review process and postpone the foreclosure sale. The emails, succinctly, consist of Mrs. Mitchell and Mr. Ortwerth communicating about previous postponements of prior foreclosure sales (not the one at issue here), requests for additional documents, and acknowledgments that the loan review process was ongoing. No reasonable inference of this evidence would lead a rational trier of fact to infer the promises asserted by the Jacksons.

To prove a promissory estoppel claim, a plaintiff must first and foremost show that a promise has been made. *Calabro*, 15 S.W.3d at 879. This the Jacksons did not do. Citi, by affidavits and other evidence, has shown that the evidence is insufficient to prove a genuine issue of material fact exists for the promissory estoppel claim and has successfully negated an essential element of the claim. *Rye*, 477 S.W.3d at 264–65. The Jacksons have not met the burden that properly shifted to them. *Id.* For the foregoing reasons, we affirm the trial court's grant of summary judgment on the promissory estoppel claim.

## C. Covenant of Good Faith & Fair Dealing

Third, we turn to whether the trial court properly granted summary judgment to Citi as to the Jacksons' breach of the covenant of good faith and fair dealing claim.

In Tennessee, the common law imposes a covenant, or duty, of good faith and fair dealing for the performance and enforcement of every contract. *Dick Broadcasting Co.,* 395 S.W.3d at 660 (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)); *see also Plastic Surgery Assocs. of Kingsport, Inc. v. Pastrick*, No. E2014–01203–COA–R3–CV, 2015 WL 2400411, at *9 (Tenn. Ct. App. May 19, 2015). What this duty consists of depends on the individual contract in each case. *Wallace*, 938 S.W.2d at 686 (quoting *TSC Indust. Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)). In performance and enforcement of a contract, each party is presumed to know the law, and this duty is implied in that understanding. *Id.* (citing *TSC Indust. Inc.*, 743 S.W.2d at 173).

However, this duty does not extend beyond the agreed upon terms of the contract and "the reasonable contractual expectations of the parties." *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.,* No. M2016–00358–COA–R3–CV, 2016 WL 6583792, at *10 (Tenn. Ct. App. Sep. 22, 2016) (citing *Wallace* 938 S.W.2d at 686). The obligation of good faith and fair dealing does not create additional contractual rights or obligations, and it cannot be used to avoid or alter the terms of an agreement. *Cadence*

*Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015) (citing *Lamar Adver. Co. v. By–Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009)). Two over-arching policy concerns ground this duty: "honor[ing] the reasonable expectations of the contracting parties and (2) . . . protect[ing] the rights of the parties to receive the benefits of the agreement into which they entered." *Id.* (citing *Lamar Adver.*, 313 S.W.3d at 791). Further, the Tennessee Supreme Court held in *Wallace* that "[p]erformance of a contract according to its terms cannot be characterized as bad faith." 938 S.W.2d at 687.

The Jacksons argue that Citi breached the duty of good faith and fair dealing by conducting the foreclosure sale after allegedly promising to postpone it pending the Jacksons' loan modification review. The Jacksons concede that the Deed and Note contain no unilateral right to a loan modification or even a method for handling loan modification requests, but they assert that Citi was bound to exercise good faith as the loan servicer in the loan modification process. In essence, the Jacksons argue that Citi mishandled the loan modification review process in bad faith by going forward with the foreclosure sale, thus violating the duty as it relates to the servicing of their loan under the Note and Deed.

Citi argues that there is no evidence suggesting it mishandled or in bad faith bungled the Jacksons' loan modification review, that Citi had no obligation to complete the review or postpone the foreclosure under the Note and the Deed, and, further, that the claim is precluded because there is no specific contractual provision that was breached. We agree with Citi's first two contentions, and we find the issue sufficiently resolved as to not require reaching the third assertion.

As the moving party, Citi had the initial burden of proving that the Jacksons' evidence was insufficient at the summary judgment stage and that there were no genuine issues of material fact. *Rye*, 477 S.W.3d at 264. By affidavits from employees, the emails between Mr. Ortwerth and Mrs. Mitchell, the Note, and the Deed, the uncontroverted evidence shows no bad faith effort by Citi to mishandle, misappropriate, or delay the Jacksons' loan modification review. As the trial court rightly noted, even if Citi concedes that the Jacksons provided Mrs. Mitchell with the requested documents, there is absolutely no evidence that Mrs. Mitchell ever delivered the documents to Mr. Ortwerth or any other Citi agent, representative, or employee.

Citi properly points out that it was under no contractual obligation, express or implied, under the Deed and the Note to perform such a review or postpone the foreclosure sale for a third time. Despite this fact, Citi provided two such postponements before the eventual foreclosure sale. Citi granted these gracious delays despite the Jacksons' having been in default for approximately five years. This case is analogous to *Cadence Bank,* where the plaintiff claimed a violation of the duty of good faith and fair dealing when the bank failed to refinance the plaintiff's loan after having done so before. 473 S.W.3d at 771. However, the court affirmed summary judgment, finding no duty on

the bank's part because the contract provided no unilateral right to refinance. *Id.* Similarly, the Jacksons had no unilateral right to be considered for or offered a loan modification, nor did they have a unilateral right to postpone the foreclosure sale. To find Citi had a duty to complete the loan review and not foreclose on the Property would be to "create additional contractual rights or obligations" not permitted by the duty of good faith and fair dealing. *Id.* at 769 (citations omitted).

Further, the record is devoid of any reference to any kind of promise made by Citi to stall the foreclosure sale on July 29, 2014. The evidence viewed entirely in a light favorable to the Jacksons leads to only one conclusion, that Citi acted in good faith, it made no promise to postpone the final foreclosure sale, and the contracts at issue did not obligate Citi to postpone the foreclosure pending the loan modification review. Citi properly met its burden of production. *Rye*, 477 S.W.3d at 264.

Shifting the burden, the Jacksons' reliance on *Elliott v. Elliott* is misplaced. 149 S.W.3d 77 (Tenn. Ct. App 2004). The marital dissolution agreement in *Elliott* clearly and unambiguously required a transfer of stock options from a former husband to a former wife. *Id.* at 85. Due to issues with transferring the stock, the husband and wife agreed via telephone that he would exercise the stock options and transfer the subsequent proceeds to his ex-wife. *Id.* He failed to do this, despite a clear contractual obligation to do so, even if the procedure by which to transfer the stock (or its equivalent) was not explicitly stated in the contract. *Id.* By failing to fulfill this literal, unambiguous contractual obligation, the court held that he violated the duty of good faith and fair dealing. *Id.* at 86.

Conversely, here, the Note and Deed neither required nor necessitated nor mentioned any obligation by Citi to provide a loan modification review or to postpone a foreclosure sale in the literal and unambiguous terms of the contracts. *Elliott* dealt with a bad faith failure to fulfill a clear contractual obligation to transfer stock; the instant case presents no similar or analogous obligation. *Id.*

The Jacksons point to Mrs. Jackson's testimony that Mrs. Mitchell delivered the documents to Mr. Ortwerth and that he communicated to Mrs. Mitchell that the foreclosure was to be postponed again. This assertion is without any support in the record before us except for Mrs. Jackson's uncorroborated testimony. Further, the Jacksons cannot point to any provision in either the Deed or the Note that concerned the loan modification process or any unilateral right to a loan modification. The record is clear that Citi exercised its right to accelerate the debt and to sell the Property in foreclosure under the clear terms of the Deed. Citi was under no contractual obligation to review or to complete the Jacksons' loan modification review. Citi was also under no obligation to postpone the foreclosure sale and made no subsequent promises to do either.

The Jacksons rely on language in *Cadence Bank* to claim that the duty "is not

limited to the specific contract terms but is a method of effectuating the parties' intent in unforeseen circumstances." 473 S.W.3d at 770 (quoting 21 Tenn. Prac. Contract Law & Practice § 8:33 (2014)). We understand certain contracts by their nature may, at times, require the completion of actions outside of the literal terms to ensure fulfillment of the contract, especially when unforeseen circumstances arise. This is not one of them.

The Note and Deed obligated Citi to service the mortgage in good faith. Citi did so, providing multiple extensions to the Jacksons despite not being required to do so. To extend Citi's obligation under the duty of good faith and fair dealing to require that it undertake or complete a loan modification review and subsequently postpone a foreclosure sale explicitly provided for in the contract is unwarranted. To do so would "create additional contractual rights or obligations . . . and alter the terms of an agreement." *Cadence Bank,* 473 S.W.3d at 769. What the duty consists of is different depending on each independent contract, and it stretches reason to extend the duty to explicitly alter Citi's right to foreclose. *See Wallace*, 938 S.W.2d at 686. As such, Citi's performance of the Note and the Deed according to their terms by selling the Property in a foreclosure sale "cannot be characterized as bad faith." *Id.* at 687. The Jacksons have failed to prove there is a genuine issue of material fact. *Rye*, 477 S.W.3d at 265.

For the foregoing reasons, the trial court properly granted summary judgment to Citi on the duty of good faith and fair dealing claim because there was no genuine issue of material fact and Citi was entitled to judgment as a matter of law.

## D. Intentional Misrepresentation

We turn next to whether the trial court properly granted summary judgment to Citi on the Jacksons' intentional misrepresentation claim. Under Tennessee law, an intentional misrepresentation claim, also known as fraudulent misrepresentation or, simply, fraud, contains six elements:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodges v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (citing *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2011); *Lapinsky v. Cook,* No. E2015–

- 16 -

00735–COA–R3–CV, 2016 WL 5385849, at \*14 (Tenn. Ct. App. Apr. 20, 2016) (citations omitted).

The Jacksons argue that while no explicit promise or representation was made in the email chain between Mrs. Mitchell and Mr. Ortwerth, the emails and the circumstances present a strong inference that a promise was made by Citi to complete the loan review process, provide the Jacksons with a decision, and postpone the foreclosure sale. Citi, conversely, contends that the evidence proffered by the Jacksons is insufficient to prove the first element of the claim, a representation or promise, and further, that such a representation must concern a past or present fact, not a future event. We agree with Citi's first argument.

As we noted in our discussion of the promissory estoppel claim above, the Jacksons admit Citi made no explicit promise in the email chain to complete the loan modification review and to postpone the foreclosure sale. Further, Citi made a properly supported motion for summary judgment negating the first element of the Jacksons' claim with the evidence in the email chain between Mr. Ortwerth and Mrs. Mitchell. No rational trier of fact could determine that the promise alleged by the Jacksons was made by Mr. Ortwerth or any Citi representative in the course of the email exchange.

The Jacksons point to past emails where Mr. Ortwerth appeared to promise completion of a review by a certain date. Those emails are irrelevant in the instant matter. The emails regarding the third and final foreclosure sale only mention "checking progress" by the foreclosure sale date on July 29, 2014. Second, nothing in the emails suggests anything remotely resembling a promise or a representation to postpone the third and final foreclosure sale date. Mrs. Jackson's testimony that Mrs. Mitchell told her the July 29, 2014 sale was postponed is, similarly, lacking any support in the record. Mrs. Mitchell's unfortunate passing means the Jacksons are unable to present sufficient evidence to show a genuine issue of material fact exists regarding their intentional misrepresentation claim. *Rye*, 477 S.W.3d at 265.

We do not address whether the representation related to a present or future fact because the lack of a representation is sufficient to resolve this matter. For the foregoing reasons, we hold that the trial court properly granted summary judgment and Citi was entitled to judgment as a matter of law.

## V. CONCLUSION

The judgment of the trial court is affirmed. This case is remanded for further

proceedings consistent with this opinion. Costs of this appeal are taxed to appellants, L.J. Jackson and Brenda Jackson.

 

_____
JOHN W. MCCLARTY, JUDGE